## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CARLTON CHARLES                                                    CIVIL ACTION

VERSUS                                                             NO. 15-1697

LYNN COOPER, WARDEN                                                SECTION "F"(1)

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

Petitioner, Carlton Charles, ("Charles"), is a state prisoner incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana.[1]  On July 19, 2012, he was charged by felony bill of indictment with three (3) counts of racketeering; ten (10) counts of money laundering; three (3) counts of conspiracy to possess with the intent to distribute hydrocodone; two (2) counts of conspiracy to possess with the intent to distribute diazepam; two (2) counts of conspiracy to possess with the intent to distribute alprazolam; one (1) count of conspiracy to possess with the intent to distribute codeine; and seven (7) counts of conspiracy to distribute a legend drug without a

---

[1]Rec. Doc. No. 1, Petition.

prescription.[2]  On July 31, 2012, Charles pleaded guilty to each of the charges.[3]  On August 20, 2012, he received a sentence of twenty-five (25) years at hard labor for the racketeering and money laundering charges; a sentence of five (5) years at hard labor for the charges of conspiracy to possess with the intent to distribute various drugs; and a sentence of two (2) years and six (6) months at hard labor for the charge of conspiracy to distribute a legend drug without a prescription.[4] All sentences were to run concurrent.  Charles did not appeal his sentence or conviction.

His wife, Gwendolyn Charles, was indicted on multiple related counts, and also pleaded guilty on July 31, 2012.[5]  She waived all delays and the court imposed a ten (10) year sentence, which it suspended pursuant to La. Code Crim. Proc. art. 893, along with five (5) years of active probation.[6]

On March 5, 2013, Charles, through counsel, filed an application for post-conviction relief in the state district court.[7]  In his application he asserted three claims: (1) his right to appeal should be reinstated because his attorney had failed to follow-up on his initial request to seek an appeal; (2) the district court erred by failing to hold a hearing on whether Charles should have been allowed to withdraw his guilty plea where he informed the court at sentencing that he felt "ambushed" by the

---

[2]State Rec., Vol. 1 of 3, Bill of Indictment, 7/19/12.

[3]State Rec., Vol. 1 of 3, Transcript, 7/31/12; Guilty Plea Form, 7/31/12.

[4]State Rec., Vol. 1 of 3, Minute Entry, 8/20/12.

[5]State Rec., Vol. 1 of 3, Transcript, 7/31/12; Minute Entry, 7/31/12.

[6]*Id.*

[7]State Rec., Vol. 1 of 3, Application for Post-Conviction Relief, 3/5/13.

guilty plea colloquy and had never advised his lawyer that he was willing to plead guilty; and (3) his guilty plea was constitutionally invalid because it was coerced.[8]

An evidentiary hearing was held on Charles' post-conviction application on June 14 and 24, 2013.[9] The state district court denied his application for post-conviction relief, and Charles filed an oral notice of intent to seek an appeal.[10] On November 14, 2013, the Louisiana Fourth Circuit Court of Appeal denied his writ application, finding that he had "failed to demonstrate that his claims have any merit."[11] One year later, on November 14, 2014, the Louisiana Supreme Court denied his related writ application without reasons.[12]

On May 19, 2015, Charles, through counsel, filed a petition for federal *habeas corpus* relief.[13] In his federal petition he asserts two grounds for relief: (1) his guilty plea was coerced; and (2) he received ineffective assistance of counsel due to counsel's contribution to the coercion of his guilty plea.

---

[8]State Rec., Vol. 1 of 3, Memorandum in Support of Post-Conviction Relief, 3/5/13.

[9]State Rec., Vol. 1 of 3, Minute Entry, 6/14/13; Minute Entry, 6/24/13; State Rec., Vol. 2 of 3, Transcript 6/14/13; Transcript, 6/24/13.

[10]State Rec., Vol. 1 of 3, Minute Entry, 6/24/13; State Rec., Vol. 2 of 3, Transcript, 6/24/13.

[11]State Rec., Vol. 3 of 3, 4th Cir. Order, 2013-K-1199, 11/14/13.

[12]State Rec., Vol. 3 of 3, La. S. Ct. Order, 2013-KP-2915, 11/14/14.

[13]Rec. Doc. No. 1, Petition.

The State concedes that Charles' petition is timely and that his claims are properly exhausted.[14] However, the State argues that his petition should be dismissed because his claims lack merit, as his guilty plea did not result from coercion.[15]

## I.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[14]Rec. Doc. No. 10, State's Response.

[15]*Id.*

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas

5

courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from

6

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. *White v. Woodall*, 134 S.Ct. 1697, 1701 (2014).

## II.   *Petitioner's Claims*

### 1.   **Guilty plea was coerced**

In his first claim, Charles contends that his guilty plea was the result of coercion due to the "combined efforts of the prosecution, the court and his own lawyers." Specifically, Charles asserts that the package deal offered to him and his wife coerced him into pleading to a twenty-five year sentence, which he never would have accepted, but for the fact that his wife would be remanded to prison if he did not. He argues that the bond set against his wife, at $1.2 million, lacked a reasonable basis and instead was used to give the State leverage over Charles in order to get him to agree to the plea deal. Furthermore, he asserts that the state court judge who accepted his plea created an intimidating environment and "ran roughshod over" his and his wife's "obvious reluctance" to plead.[16]

In challenging the voluntariness of his plea, Charles has stated a cognizable claim for federal *habeas corpus* relief. "It is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28, 113 S. Ct. 517, 523, 121 L. Ed. 2d 391 (1992). However, when a *habeas* petitioner challenges the validity of his guilty plea, he carries the burden of proving his plea

---

[16]Rec. Doc. No. 1-2, Memorandum in Support.

7

was not in fact knowing and voluntary. *United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988). For the following reasons, the undersigned finds that Charles has not met his burden of proof in this case.

For a plea to be considered knowing, "the defendant must have a full understanding of what the plea connotes and of its consequence." *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000) (quotation marks and citation omitted). For purposes of federal *habeas* review, "it suffices if a defendant is informed of the maximum term of imprisonment." *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir. 1985). "As long as the defendant understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *Id.*

A guilty plea must also be "voluntary." While the terms "knowing" and "voluntary" are often used interchangeably, they do embody distinct concepts. *Hernandez*, 234 F.3d at 254, n.3. A "knowing" plea is one where the defendant is aware of the direct consequences of his plea, whereas a "voluntary" plea is one not induced by "threats, misrepresentation, unfulfilled promises, or promises of an improper nature." *Id.*

Here, Charles challenges the voluntariness of his plea. The state district court rejected this claim when he raised it in his post-conviction application, after a two-day evidentiary hearing.[17] In doing so, the state court judge stated:

> All right. I find that there's not a scintilla of merit to any one of these [three claims]. I think there was gamesmanship here, because he wanted to get a different sentence, but he put himself in a position where he got his wife not going to jail, he got a significant amount of his assets returned, he bargained for a deal where he could get forty percent of his sentence rather than a hundred, and I see people every day with

_____

[17]State Rec. Vol. 2 of 3, Transcript, 6/14/13; Transcript, 6/24/13.

a lot less involvement getting longer sentences and I think that he got a pretty good sentence of ten years for the magnitude of this crime.[18]

Charles argues that in its ruling, the state court denied his application for post-conviction on a "factual basis" and that the judge ignored the question of whether or not the plea was coerced. However, the trial court's ruling clearly indicated that it was rejecting the claims on the merits. Implicit in its finding that Charles was challenging his sentence because he wanted to get a better sentence after-the-fact was the underlying conclusion that Charles was not coerced into pleading guilty. Indeed, the Louisiana Fourth Circuit also rejected this claim as "meritless" based on the transcript of the guilty plea as well as testimony at the post-conviction evidentiary hearing.[19] These state court findings therefore are entitled to the deferential standards of review under the AEDPA, and may only be disturbed if they resulted in a state court finding that was contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d)(1).

Charles' claim relies primarily on the guilty plea transcript, as well as the testimony of the witnesses he called at the post-conviction hearing. After review of the guilty plea transcript as well as the post-conviction hearing, the undersigned concludes that the state court decisions rejecting his claim were not objectively unreasonable, nor were they contrary to federal law, as it appears that Charles both knowingly and voluntarily entered into his guilty plea.

Charles argues that the guilty plea was involuntary for numerous reasons. First, he argues that he never told his attorney that he would plead to a twenty-five year sentence prior to the day of arraignment. To the contrary, his attorney testified that, while reluctant, Charles agreed to take the twenty-five year deal, as it was the best deal the District Attorney's office was willing to make, and

---

[18]*Id.* at p. 238-39.

[19]State Rec., Vol. 3 of 3, 4th Cir. Order, 2013-K-1199, 11/14/13.

if he did not accept the guilty plea, his wife would not receive the benefit of a suspended sentence and would be going to prison.[20]

In fact, the record reflects time and again–and Charles himself asserts–that his goal was to keep his wife out of prison.  He argues that because the charges against her were essentially meritless, the package plea deal amounted to coercion, where he had no choice but to plead guilty in order to protect his wife.  This argument is baseless.  Both Charles and his wife faced tens of counts of various charges–racketeering, money laundering, and various drug distribution offenses–which were brought pursuant to a felony bill of indictment after a grand jury found probable cause.[21]  There was also a twenty-six page affidavit accompanying the arrest warrant that detailed the nature of the charges.  The fact that the package plea deal offered Charles a twenty-five year sentence in return for a suspended sentence in which his wife would face no prison time was not coercive–she was not an innocent third party that was not subject to prosecution, but rather she was herself implicated in the alleged illegal activity.

Indeed, the very case that Charles relies on, *United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979) undercuts his own argument.  In that case, the Fifth Circuit recognized that "It is generally within a prosecutor's discretion merely to inform an accused that an implicated third person 'will be brought to book if he does not plead (guilty). . . . If (an accused) elects to sacrifice himself for such motives, that is his choice . . . .'" *Id.* at 659 (quoting *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959)).  The Fifth Circuit also noted that prosecutors who choose to use that technique must observe a high standard of good faith." *Id.*  Therefore, "*absent probable cause to believe that*

---

[20]State Rec., Vol. 2 of 3, Transcript, 6/24/13, pp. 174, 176.

[21]State Rec., Vol. 1 of 3, Bill of Indictment, 7/19/13.

*the third person has committed a crime*, offering 'concessions' as to him or her constitutes a species of fraud." *Id.* (emphasis added).

In *Nuckols*, the Fifth Circuit could not conclude on the record before the court whether the threats were made in good faith because "there [was] no evidence indicating that appellant's wife was an accomplice to appellant's criminal conduct, or implicated in any other that would have justified her prosecution." *Id.* at 570. In contrast, here Charles' wife already faced an indictment on many counts. Indeed, the grand jury had found probable cause for the charges. Thus, it was not unreasonable for the state courts to reject the argument that the package plea deal was in bad faith.[22]

Charles also argues that the prosecutor coerced his plea by opposing a reduction of his wife's $1.2 million bond. He argues that because the bond was set so high, and many of their assets had been seized, the only way to avoid her pretrial detention was for both him and his wife to plead guilty at arraignment.[23]

Based on the charges facing Mrs. Charles, the state court concluded that the bond was reasonable, and declined to reduce the bond.[24] The fact that Charles made a choice to enter a guilty plea to a twenty-five year sentence, rather than see his wife go to prison, was perhaps a difficult choice to make, but it cannot therefore be said to have been a coercive one. Criminals with lesser

---

[22]In his Reply to the State's Response, Charles argues that Mrs. Charles' involvement with the pharmacy ended in 2007, as a matter of fact, based on the revocation of her license, and on her own testimony. *See* Rec. Doc. No. 11-2, Reply. However, the grand jury found probable cause for the indictment, and the State affirmatively argued at the bond reduction hearing that this was not a case of "guilt by association." *See* State Rec., Vol. 1 of 3, Transcript, 7/31/12. Despite Charles' own contentions to the contrary, this court is satisfied from a review of the entire state court record that there was an abundance of evidence against Mrs. Charles herself.

[23]Charles' attorney had worked out a deal with the District Attorney that the warrants for their arrest would not be executed prior to arraignment, and thus they had avoided jail time up until that day. *See* State Rec., Vol. 2 of 3, Transcript, 6/24/13, p. 176.

[24]State Rec., Vol. 1 of 3, Transcript, 7/31/12.

means often face bonds that are far too high for them to afford, yet that mere fact alone does not result in a finding that a bond was unreasonable or set in bad faith.

Finally, Charles argues that the state court judge created an environment of intimidation and ran "roughshod" over both his and his wife's "obvious" reluctance to plead.  After this court's review of the entire record, this argument must fail for many reasons.  First, any "reluctance" or hesitation reflected in the guilty plea colloquy was related to Mrs. Charles' plea, which is not being (and cannot be) challenged by Mr. Charles.  Furthermore, this court's review of the transcripts finds that the testimony of the attorneys at the post-conviction hearing was supported.  Charles' former attorneys testified that any hesitancy on Ms. Charles' part was due to a lack of preparation in entering the plea deal, and her attorneys' attempts to enter a best interests plea on her behalf, despite the fact that such a plea was not a part of the agreement with the State.[25]

In addition, any frustration on the judge's part does appear to have been caused by Mrs. Charles' attorneys' failure to prepare their client, and lack of courtroom decorum.[26]  In any event, the relevant parts of the plea colloquy, the parts pertaining solely to Charles himself, speak for themselves:

| | |
|---|---|
| THE COURT: | [Following reading his charges] Mr. Charles, do you understand that is what you're entering a Plea of Guilty to? |
| MR. CHARLES: | I understand, your honor.[27] |

* * *

[25]State Rec., Vol. 2 of 3, Transcript, 6/24/13, pp. 188-89.

[26]The guilty plea transcript reflects that one of Mrs. Charles attorneys laughed during the proceedings, which frustrated the judge, as did the attempt to enter a best interest plea.  State Rec., Vol. 1 of 3, Transcript, 7/13/12, pp. 18-23.

[27]State Rec. Vol. 2 of 3, Transcript, 7/31/12, p.8. The transcript has been edited for purposes of brevity and to highlight the portions relevant to Charles himself rather than his wife.

THE COURT:          Mr. Charles, do you understand that you have the right to a
                    trial by Judge or Jury, and if convicted, the right to appeal.
                    And by entering your plea of guilty, you're waiving your
                    rights to trial and appeal.

MR. CHARLES:        I understand.[28]

                    * * *

THE COURT:          [After again reading his charges and the related sentencing
                    ranges] Do you understand those are the sentencing ranges to
                    which you've been indicted?

MR. CHARLES:        I understand, Your Honor.  But don't necessarily agree.

THE COURT:          Fine. Do you also understand the Sentence you will receive
                    is as follows: [reads sentence for each charge]
                    Do you understand all that Mr. Charles?

MR. CHARLES:        Yes.[29]

                    * * *

THE COURT:          Do you both understand that by pleading guilty, you waive
                    your right to confront and cross examine the witnesses who
                    accuse you of these crimes, and to compulsory process of the
                    Court to require witnesses to appear and testify for you?

MS. CHARLES:        I do.

THE COURT:          Do you understand that Mr. Charles?

MR. CHARLES:        I think so.

THE COURT:          Do you understand that by pleading guilty, you waive your
                    right to confront and cross examine the witnesses who accuse
                    you of these crimes and to compulsory process of the Court
                    to require witnesses to appear and testify for you?

---

[28]*Id.* at 9.

[29]*Id.* at 12-13.

MR. CHARLES:        Yes.[30]

                    * * *

THE COURT:          Mr. Charles are you entering a plea of guilty to this crime
                    because you are, in fact, guilty?  I'm asking you a question
                    Mr. Charles.  Are you entering –

MR. CHARLES:        Yes, Your Honor.

THE COURT:          –a plea of guilty,

MR. CHARLES:        I heard you.  I'm listening.  Just to move this process–

THE COURT:          I'm sorry?

MR. CHARLES:        I said to move this process along, yes.

THE COURT:          Mr. Charles, I'm asking you for a yes or a no.   Are you
                    entering this plea of guilty because you are, in fact, guilty?

MR. CHARLES:        Yes.[31]

                    * * *

THE COURT:          Mr. Charles, have you been forced, threatened or intimidated
                    into making this plea?

MR. CHARLES:        No.

THE COURT:          Are you fully satisfied with the handling of your case by your
                    attorneys and the way in which they have represented you?

MS. CHARLES:        Yes.

MR. CHARLES:        Yes.

THE COURT:          Do you further understand that by pleading guilty, you waive
                    your right against self incrimination.  That at your trial you
                    would not have to testify.  And if you did not testify, myself
                    or a jury would not have held your silence against you.  You

---

[30]*Id.* at 15-16.

[31]*Id.* at 17.

|  | also give up the right not to say anything against yourself or against your interest such as you do by entering a plea of guilty? |
|---|---|
| MS. CHARLES: | Yes. |
| MR. CHARLES: | Yes. |
| THE COURT: | Do you understand that if you elected to have a trial, you would have the right to have competent counsel represent you at trial.  And if you'd been unable to pay for counsel, I would have appointed competent counsel to represent you. But by entering a plea of guilty you waive those rights? |
| MS. CHARLES: | Yes. |
| MR. CHARLES: | Yes.[32] |

Based on the above colloquy and the entirety of the guilty plea transcript, as well as the transcript of the thorough two-day evidentiary hearing Charles received in the state district court, this court finds that the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of federal law.  Charles has not borne his burden of proving that his plea was involuntary as a result of coercion.  Charles is not entitled to federal *habeas corpus* relief on this claim.

## 2.     Ineffective assistance of counsel when counsel contributed to the coercion of the guilty plea

In his second and final claim, Charles asserts that he received ineffective assistance of counsel because his attorney contributed to the coercion of his guilty plea at his arraignment. Because this court has already determined that Charles entered his plea agreement knowingly and

---

[32]*Id.* at 23-24.

15

voluntarily, this claim cannot stand.  His attorneys could not have contributed to coercion where there was none.  Charles is not entitled to federal *habeas corpus* relief on this claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Carlton Charles be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[1]

New Orleans, Louisiana, this __19th__ day of __November__ 2015.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.